# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **PAMELA S. TURLEY,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:08CV00045 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | Chief United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Eda Giusti, Assistant Regional Counsel, Eric P. Kressman, Acting Regional Chief Counsel, Region III, and Andrew C. Lynch, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

The plaintiff, Pamela Turley, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for supplemental security income pursuant to title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401- 433, 1381-1383d (West 2003 & Supp. 2009). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g) and § 1383(c)(3).

Turley filed for benefits in October 2006, alleging disability beginning September 25, 2006, due to a combination of mental and physical ailments, including multiple sclerosis ("MS"), depression, and back and knee pain. Her claim was denied initially and upon reconsideration. Turley had a video hearing before an administrative law judge ("ALJ"), during which Turley, represented by counsel, and a vocational expert ("VE") testified. The ALJ denied Turley's claim and the Social Security Administration's Appeals Council denied Turley's request for a review of the ALJ's opinion. Turley filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, and have briefed the issues. The case is ripe for decision.

II

Turley, now thirty-three, was thirty years old when she filed for disability, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(c) (2009). At the time of the hearing, Turley was 265 pounds and five feet six inches tall. Although Turley only attended school until the ninth grade, she later obtained a GED. In the past, Turley has worked as a fast-food restaurant cook, cashier, and cleaner, a nursing home dishwasher, a convenience store cashier and stocker, a taxicab driver,

and a hotel housekeeper. Turley has not engaged in substantial gainful employment since she filed for disability.

In 1994, Turley received treatment for lower back pain after a slip and fall at work. The emergency room physician diagnosed her with acute lumbar contusion and recommended conservative treatment. She returned to the hospital a week later again complaining of lower back pain. The physician diagnosed her with lumbar strain and told Turley to avoid lifting anything weighing more than fifteen pounds. In 2005, Turley went to the emergency room for low back pain after hitting a wall with a go-cart. She was again prescribed pain medications. This pain increased with her pregnancy that year. X rays and an MRI revealed a normal lumbar spine. Turley was advised to lose weight. In 2006, she again sought treatment for back pain, but her X rays were normal. Turley was diagnosed with acute myofascial strain of the cervical spine and prescribed medication. In 2007, Turley complained of right sciatic pain, but two lumbar spine X rays were normal.

In 2003, Turley sought mental health treatment because of conflicts she was having with her husband and her four-year-old son. A psychiatrist diagnosed Turley with a depressive disorder not otherwise specified, noting that she had a single, severe episode of major depression in 1991, and prescribed medication. Turley also received individual counseling on a weekly basis from a social worker.

In the summer of 2007, Turley returned to counseling complaining of anxiety and occasional thoughts of suicide. She reported suffering from several symptoms including low energy, insomnia, sadness, helplessness, appetite disturbance, irritability, jumbled thoughts, and low libido. The main cause of these symptoms were Turley's family stresses. The counselor assessed Turley as severely depressed. In the fall of 2007, Turley went to a medical center where she told the nurse practitioner she was suffering from bipolar disorder, depression, and vitamin B12 deficiency and that she wanted a new anti-depressive medication. She was prescribed new medication and given a B12 injection.

In 2006, Turley went to the emergency room complaining of knee pain, but her X rays were normal. She was diagnosed with a sprain and given an injection. That same year, Turley started complaining of weakness and numbness, primarily on her right side, but also present on her left. A neurological examination revealed signs of MS. At an MS clinic, Turley was diagnosed as having transverse myelitis with a high risk of progressing to MS, and she began a treatment regimen of betaseron. After a couple of months of treatment, Turley's strength returned to normal—five out of five on physician's strength scale—and her gait was routine. Turley continued to report chronic tingling in her fingers and toes, slight weakness of her hands, and some fatigue. She was prescribed medication for fatigue.

In 2007, Turley complained of wrist pain and was diagnosed with a small bone cyst on her right wrist. Later that year, an optometrist also suspected she had glaucoma in both eyes, and he prescribed corrective lenses.

Reviewing Turley's medical history, the ALJ found that her bipolar disorder and back and knee issues were not medically determinable impairments, but her obesity, recent recurrence of depression and anxiety, and early signs of MS were severe impairments. The ALJ determined that Turley had the residual function capacity to perform light work as long as it does not require that she be around hazardous machinery, at unprotected heights, or climbing ladders, ropes, or scaffolds and only involves occasional manipulative handling, climbing, balancing, kneeling, crawling, stooping, and crouching. The job should also only entail one- or two-step tasks and only occasional interaction with the general public. The VE AnnMarie Cash testified that someone with these limitations would be able to perform the job of a housekeeper. The ALJ agreed and concluded that, based on work history report in which Turley described her prior work, Turley was not disabled because she was able to perform her past relevant work. Turley argues that this conclusion is not supported by substantial evidence. I disagree.

III

The plaintiff bears the burden of proving that she is suffering from a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity ("RFC"), which is then compared with the physical and mental demands of the claimant's past relevant work and of other work

present in the national economy. *See Reichenbach v. Heckler*, 808 F.2d 309, 311(4th Cir. 1985).

In accordance with the Act, I must uphold the ALJ's findings if substantial evidence supports them and they were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). It is not the role of this court to substitute its judgment for that of the Commissioner. *See id.*

In challenging the Commissioner's ruling, Turley asserts that the ALJ failed to consider the cumulative effect of the combination of her alleged mental and physical impairments. However, the ALJ's determination of Turley's RFC demonstrates that the ALJ considered each alleged ailment and how a combination of these problems would impact Turley's ability to work. To determine "whether an individual's impairments are of sufficient severity to prohibit basic work related

activities, an ALJ must consider the combined effect of a claimant's impairments." *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (per curiam). Additionally, "the ALJ must adequately explain his or her evaluation of the combined effect of impairments." *Id.* "This rule merely elaborates upon the general requirement that a ALJ is required to explicitly indicate the weight given to relevant evidence." *Id*.

Turley's main physical complaints were depression, anxiety, bipolar disorder, back and knee problems, obesity, and the early symptoms of MS. The ALJ found that only three of these were severe impairments: preliminary signs of MS, obesity, and a recent recurrence of depression and anxiety. The ALJ determined that the remainder were not severe, but nevertheless considered their impact on Turley's capacity to work. For example, the ALJ noted that Turley's weight may have an adverse effect on her back and knee pain, and captured the effect through limitations on her RFC. Specifically, the ALJ limited Turley to positions with only light exertion even though the expert medical consultants found she was capable of medium exertion and Turley herself testified that she is able to carry her twenty-five pound son.

The record also shows that Turley's MS-related symptoms were factored into her RFC. Turley testified that her preliminary MS impaired the function of her hands, caused tingling in her limbs, and made balancing difficult. Turley's treating

physician found, however, that her strength returned to normal (five out of five rating) after successful betaseron treatment. Turley also testified that she can write, pick up coins and paper clips, type, comb her hair, and dress herself. Thus, the evidence does not compel the conclusion that Turley cannot perform jobs that require frequent, general use of the arms and hands as Turley contends. Nonetheless, the ALJ did restrict Turley from performing work that involved balancing or climbing precarious structures, such as ladders or scaffolds and more than occasional hand manipulation.

The ALJ also found that Turley's psychological symptoms limited her RFC. Turley complained of fatigue, insomnia, hopelessness, helplessness, labile mood, appetite disturbance, low libido, and jumbled thoughts, as a result of depression, anxiety, and bipolar disorder. The ALJ determined Turley's purported bipolar disorder was not a medically determinable impairment. Although a nurse practitioner assessed her as having bipolar disorder, only physicians and psychologists are medically acceptable sources for diagnoses. *See* 20 C.F.R. § 416.913(a) (2009). Nonetheless, the ALJ did consider all the psychological symptoms Turley mentioned, then evaluated the effect they had on Turley's daily activities and determined whether she had experienced any repeated demonstrable increases in severity.

Turley implied that due to her depression, she would have significant difficulty attending work on a regular basis, but the evidence does not support her assertion. According to Turley's own testimony and function report, her psychological symptoms did not prevent her from performing the typical duties of a mother of two young sons, such as changing diapers and feeding, bathing and dressing them. She reported that she cared for her active two-year-old son, and did household chores such as cooking, washing the dishes and putting clothes away. Turley also testified that, though sometimes she did not want to get out of bed, she always did.

Although Turley was withdrawn and did not have many close relationships, she at least adequately interacted with family, friends, and neighbors. The main source of her depression was difficulties in her relationship with her husband and highly active children. Turley's treating psychiatrist scored her at a sixty on the Global Assessment of Functioning ("GAF") scale, which indicates a moderate, bordering on mild, level of symptoms. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).[1] Even though she was not scored as having severe symptoms, aware of Turley's complaints of jumbled thoughts and being withdrawn, the ALJ did limit her RFC to jobs that did not require more

---

[1] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Am. Psychiatric Ass'n, *supra*.

than occasional interaction with the public or more than one- or two-step instructions.[2] Therefore, Turley's RFC reflects the impact of all her impairments and is supported by substantial evidence.

Finally, Turley contends that the ALJ erred in relying upon the VE's assertion that a housekeeper is light exertion work because the Dictionary of Occupational Titles (the "DOT") defines some cleaner positions as medium exertion. This argument is without merit. Although the DOT does have many jobs listed under the heading of housekeeper or cleaner, some of which require medium strength, the ALJ cited occupation number 323.687-014, entitled "CLEANER, HOUSEKEEPING (any industry) alternate titles: maid." 1 U.S. Employment Serv., U.S. Dep't of Labor, *Dictionary of Occupational Titles* 248 (4th ed. rev. 1991). The DOT categorized this as an unskilled, light exertion job and listed a hotel or motel housekeeper as an example. *Id.* Therefore, substantial evidence did support the conclusion that Turley would be able to resume her previous work as a hotel housekeeper.

---

[2] Turley asserts "that the ALJ erred in using Turley's daily activities as a basis for finding that she has 'no restriction.'" (Pl.'s Summ. J. Brief 11.) However, the ALJ never stated that Turley was mentally or physically unrestricted. The ALJ actually said, "In activities of daily living, the claimant has no restriction," based on Turley's own testimony in which she declared she cared of her two-year-old, washed dishes, and put some clothes away. (R. at 19.) Indeed, as described *supra*, the ALJ did find several limitations on Turley's ability to work.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: February 28, 2010

/S/ JAMES P. JONES
Chief United States District Judge